IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DIONY RATLIFF                                                                                       PLAINTIFF

v.                                    Case No. 4:13-cv-00167-KGB

CITY OF SHANNON HILLS, *et al.*                                                      DEFENDANTS

OPINION AND ORDER

On March 22, 2013, plaintiff Diony Ratliff filed this action pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*, alleging that she was arrested based on her race in violation of the Fourth and Fourteenth Amendments and the Arkansas Constitution (Dkt. No. 1). Ms. Ratliff also alleged several state law claims. Specifically, Ms. Ratliff brings claims against Bobby Hale, the former chief of the Shannon Hills Police Department (the "Department"), and Joe Lucky, a police officer with the Department, alleging (1) violations of her rights under the Fourth and Fourteenth Amendment pursuant to § 1983; (2) violations of her rights under the Arkansas Constitution pursuant to the ACRA; and (3) malicious prosecution, false arrest, and outrage under Arkansas law. Ms. Ratliff brings claims against the City of Shannon Hills, Arkansas (the "City"); Mike Kemp, mayor of the City; and current or former members of the City Council, alleging (1) violations of her rights under the Fourth and Fourteenth Amendment based on a municipal custom; (2) violations of her rights under the Fourth and Fourteenth Amendment based on deficient hiring, training, and supervising police officers; and (3) vicarious liability stemming from her state law claims of malicious prosecution, false arrest, and outrage.

On July 22, 2014, defendants filed a motion for summary judgment (Dkt. No. 19). Ms. Ratliff filed a response (Dkt. No. 35), to which defendants filed a reply (Dkt. No. 46). Ms.

Ratliff also filed a motion to strike four of the eight exhibits that defendants filed in support of their motion for summary judgment (Dkt. No. 31).  Defendants filed a response to Ms. Ratliff's motion to strike (Dkt. No. 33).  For the following reasons, the Court denies Ms. Ratliff's motion to strike and grants defendants' motion for summary judgment in its entirety.

**I.     Factual Background**

Unless otherwise noted and specified by citation, the following facts are undisputed and taken from defendants' amended statement of uncontested facts (Dkt. No. 22), Ms. Ratliff's response to defendants' statement of uncontested fact (Dkt. No. 32), and defendants' reply (Dkt. No. 46).

Ms. Ratliff resides with her husband, grandson, and parents in Shannon Hills.  At around 6:00 or 7:00 p.m. on May 6, 2012, Officer Lucky investigated two unidentified persons on four wheelers who fled from him when he activated his emergency lights and siren.  One person, who was riding a yellow four wheeler, left the city street and traveled down a rocky trail where Officer Lucky could not follow.  Officer Lucky contacted Chief Hale, who joined Officer Lucky in the search for the persons and four wheelers.

During their search, Chief Hale and Officer Lucky made multiple visits to Ms. Ratliff's home.  The only person who could speak English in the home at that time was Ms. Ratliff's 11-year-old grandson.  Chief Hale and Officer Lucky questioned the boy, who attempted at some point during that exchange to translate for his Spanish-speaking great-grandparents.  The questioning upset the boy and his great-grandparents.  The boy admitted that the four wheelers belonged to his uncle.  Officer Lucky left the boy the non-emergency phone number for the Saline County dispatch center and told him to have an English-speaking adult call as soon as possible.

At approximately 8:30 p.m. on May 6, 2012, Officer Lucky contacted Ms. Ratliff, who had left her number for Officer Lucky with Saline County dispatchers. Ms. Ratliff requested Officer Lucky return to her home so that they could discuss in person the earlier investigation. Before Officer Lucky arrived at Ms. Ratliff's home, Ms. Ratliff had made four calls to the non-emergency dispatch number and one call to 911. Saline County dispatchers, who field both the non-emergency and 911 calls, advised Chief Hale and Officer Lucky of the calls. Officer Lucky states in his police report regarding the incident that dispatchers also told him that Ms. Ratliff "was being placed on hold due to emergency calls coming in, and would hang up and call again" (Dkt. No. 19-1, at 2-3). Though Ms. Ratliff admitted in her deposition that, before she made the 911 call, dispatchers told her she was being put on hold because she was "disrupting and destructing" incoming 911 calls (Dkt. No. 19-1, at 7), Ms. Ratliff's moves to strike Officer Lucky's police report. The Court will resolve this issue below.

That night, Officer Lucky returned to Ms. Ratliff's home and began to explain the earlier investigation to Ms. Ratliff. Chief Hale arrived a short time after. When Chief Hale asked Ms. Ratliff if she had called 911, she replied, "Yes." Chief Hale instructed Officer Lucky to arrest her. She was placed under arrest and booked at the county jail in Benton, Arkansas. She bonded out approximately three to five hours later. On July 2, 2012, Ms. Ratliff pleaded not guilty to the charge of interfering with emergency communications, Arkansas Code Annotated § 5-60-125. On August 21, 2012, the Court granted a Motion to Nolle Prosequi.

Before being hired by the City and before the events described above occurred, Chief Hale and Officer Lucky satisfactorily completed certain coursework at the Arkansas Law Enforcement Training Academy, though apparently they did not complete training in racial profiling before this incident. As of May 6, 2012, the City had in a place a policy prohibiting

police officers from violating any person's constitutional rights and prohibiting officers from engaging in racial profiling.

## II.     Ms. Ratliff's Motion To Strike

Ms. Ratliff moves to strike four exhibits that defendants filed in support of their motion for summary judgment: Officer Lucky's police report (Dkt. No. 19-1, at 1); excerpts from Ms. Ratliff's deposition (*Id.* at 4); training documents and certificates of Chief Hale (Dkt. No. 19-2, at 8); and training documents and certificates of Officer Lucky (*Id.* at 18). The standard that guides the Court's consideration of evidence at the summary judgment stage of the proceeding is not whether the evidence would be admissible at trial—"it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Rule 56 of the Federal Rules of Civil Procedure permits a party to object to evidence cited by the other party at the summary judgment stage and requires the Court to make a determination regarding whether the evidence could be presented at trial in an admissible form. *See* Fed. R. Civ. P. 56(c)(2). For the following reasons, the Court denies Ms. Ratliff's motion to strike as to all four exhibits.

First, Ms. Ratliff argues that the police report and training documents and certificates must be struck because they were not authenticated as required by Federal Rule of Evidence 901. Defendants respond that the report need not be authenticated under Rule 901 because it is self-authenticating evidence under Federal Rule of Evidence 902. Regardless, in response to Ms. Ratliff's motion to strike and before Ms. Ratliff responded to defendants' motion for summary judgment, defendants provided copies of the exhibits that were properly authenticated under Rule 901 (Dkt. No. 33-1). The Court determines this evidence could be presented at trial in an admissible form.

Second, Ms. Ratliff similarly argues that excerpts from her deposition must be struck because they were not authenticated by the court reporter nor signed by the deponent. However, while a court reporter must certify a deposition transcript, he or she must only deliver the certified original to the party who sought the deposition—in this case the defendants. Fed. R. Civ. P. 30(f)(1). Defendants provided the court reporter's certification of Ms. Ratliff's deposition (Dkt. No. 33-1, at 10). Moreover, Ms. Ratliff points to no rule that a deponent must sign a deposition before it is used in court and submits no *errata* sheet for this deposition for the Court's consideration. The Court determines this evidence from Ms. Ratliff's deposition could be presented at trial in an admissible form.

Third, Ms. Ratliff argues that Officer Lucky's police report, including the dispatcher's statements recorded in writing by Officer Lucky in the police narrative, is inadmissible evidence because it is hearsay precluded by Federal Rule of Evidence 802. Federal Rule of Evidence 803(8), to which Ms. Ratliff cites as support for the proposition that investigative reports by police and law enforcement officers are not within the public records and report exception to the hearsay rule, only applies to criminal cases. Generally, police reports are admissible "to the extent to which they incorporate firsthand observations of the officer." *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006) (quoting Fed. R. Evid. 803 advisory committee's note); *see Foster v. Gen. Motors Corp.*, 20 F.3d 838, 839 (8th Cir. 1994) (per curiam) (holding that police report prepared by investigating officer who was experienced in such investigations, conducted a neutral investigation shortly after the accident occurred, and prepared the report the next day was "clearly admissible under the hearsay exception for public records"). As for the dispatcher's statements recorded by Officer Lucky, those statements are not hearsay because they are not offered for the truth of the matter asserted but to show their effect on the "hearer." Even if the

dispatcher's statements are hearsay, they still are admissible to show probable cause. *See Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (holding that "officials may rely on hearsay statements to determine that probable cause exists" and that "[t]he report from the dispatcher provided reasonably trustworthy information that [plaintiff] had assaulted the first responders, so the deputies had probable cause to arrest him"). The Court determines this evidence could be presented at trial in an admissible form.

For these reasons, the Court denies Ms. Ratliff's motion to strike.

### III. Defendants' Motion For Summary Judgment

#### A. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### B. Ms. Ratliff's Claims Against Individual Officers

Ms. Ratliff brings constitutional claims against Chief Hale and Officer Lucky under § 1983 and the ACRA, as well as tort claims under Arkansas law.

#### 1. Section 1983 Claims

A government official sued in his individual capacity may raise the defense of qualified immunity to § 1983 claims filed. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (citation omitted) (internal quotation marks omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To determine if a qualified immunity defense applies, the Court must conduct a two-prong inquiry by examining: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct." *Stepnes*, 663 F.3d at 960 (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

First the Court will consider whether the facts alleged by Ms. Ratliff make out a violation of a constitutional right. Ms. Ratliff's remaining § 1983 claims are that Chief Hale and Officer Lucky violated her Fourth and Fourteenth Amendment rights.[1] A Fourth Amendment false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest because such an arrest does not violate the Fourth Amendment. *Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008); *Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). This is true even in the absence of statutory authorization because state laws governing warrantless arrests do not limit or expand the scope of the protections afforded by the Fourth Amendment. *Rose*, 533 F.3d at 680 (citing *Virginia v. Moore*, 553 U.S. 164, 176 (2008)). Moreover, even if actual probable cause does not exist, an officer is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least "arguable probable cause." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)).

To determine whether probable cause exists to make a warrantless arrest, a court considers whether, based on the totality of the circumstances, "the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972) (citing *Draper v. United States*, 358 U.S. 307, 311-12 (1959)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Joseph*, 712 F.3d at 1226.

---

[1] Defendants also brief Ms. Ratliff's § 1983 malicious prosecution claim, but the Court previously dismissed this claim in its Order on defendants' motion to dismiss (Dkt. No. 16).

Here, there is no genuine issue of material fact as to whether Chief Hale and Officer Lucky had probable cause to arrest Ms. Ratliff for violation of Arkansas Code Annotated § 5-60-125. The record before the Court justifies a reasonably cautious police officer's belief that Ms. Ratliff committed an offense. Ms. Ratliff admitted to calling 911. Saline County dispatchers advised Chief Hale and Officer Lucky that Ms. Ratliff had placed multiple calls to the non-emergency dispatcher before calling 911 and that she "was being placed on hold due to emergency calls coming in, and would hang up and call again" (Dkt. No. 19-1, at 2-3). The dispatchers explained to Ms. Ratliff she was "disrupting and destructing" incoming 911 calls before she made her 911 call (Dkt. No. 19-1, at 7). Based on the reports from the dispatchers and their own knowledge of the situation, Chief Hale and Officer Lucky's belief that Ms. Ratliff interfered with emergency communications by calling 911 for a non-emergency was reasonable. Even if Chief Hale and Officer Lucky did not have probable cause, arguable probable cause existed for qualified immunity purposes.

As for Ms. Ratliff's Fourteenth Amendment claim that Chief Hale and Officer Lucky arrested her because of her race in violation of the Equal Protection Clause, she must prove that they "exercised [their] discretion to enforce the . . . law on account of her race, which requires proof of both discriminatory effect and discriminatory purpose." *Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003) (citation omitted). To establish discriminatory effect, "the claimant must show people of another race violated the law and the law was not enforced against them." *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996) (citations omitted); *see Johnson*, 326 F.3d at 1000 (stating that, to show the requisite discriminatory effect and purpose, "the plaintiff must normally prove that similarly situated individuals were not stopped or arrested"). To establish discriminatory purpose, "the claimant must show the official's decision to enforce

9

the law was at least partially based on race." *Bell*, 86 F.3d at 823 (citation omitted). Although a racially-motivated arrest claim does not require proof that the plaintiff was arrested without probable cause, *Johnson.* 326 F.3d at 1000, the existence of objectively reasonable probable cause militates against a claim that an arrest was motivated by racial animus, as "the subjective motivations of the arresting police officers are irrelevant," *Hannah v. City of Overland*, 795 F.2d 1385, 1390 (8th Cir. 1986). "If the claimant shows both discriminatory effect and purpose, the burden shifts to the Government to show that the same enforcement decision would have been made even if the discriminatory purpose had not been considered." *Id.* (citation omitted).

Here, Ms. Ratliff has not submitted sufficient evidence that, even when all of the record evidence is construed in her favor, would permit a reasonable juror to find that Chief Hale and Officer Lucky exercised their discretion to enforce the law on account of Ms. Ratliff's race. She has not raised a genuine issue of material fact regarding discriminatory effect or purpose. Ms. Ratliff does not identify a similarly situated individual of another race who arguably violated the same law without being arrested. Instead, she points to evidence showing that no other person has been "booked in" for calling 911 one time and purportedly showing racial disparities in arrests between 2010 and 2012 (Dkt. No. 37, at 7). A reasonable juror could not find that this evidence establishes discriminatory effect or purpose on the part of Chief Hale or Officer Lucky. Ms. Ratliff also makes conclusory statements regarding Chief Hale's alleged racial profiling and alleges that Chief Hale and Officer Lucky violated Department policies by arresting her without a warrant. However, Department policy authorizes officers to make warrantless arrests pursuant to Rule 4.1 of the Arkansas Rules of Criminal Procedure (Dkt. No. 47-15, at 8), and Rule 4.1(a)(v) permits warrantless arrests if "otherwise authorized be law." Because there is no genuine issue of material fact as to whether Chief Hale and Officer Lucky had probable cause to

arrest Ms. Ratliff, there is no genuine issue of material fact as to whether Arkansas law otherwise authorized the arrest. Ark. Code Ann. § 16-81-116 ("If a law enforcement officer had probable cause to believe a person has violated . . . § 5-60-125, the officer may arrest the person without a warrant if the incident did not take place in the presence of the officer if the officer has probable cause to believe the person violated the section within the preceding . . . four (4) hours . . . ."). Lastly, the fact that Chief Hale and Officer Lucky had objectively reasonable probable cause to arrest Ms. Ratliff militates against her claim that her arrest was motivated by racial animus. *Hannah*, 795 F.2d at 1390.

    For these reasons, and based on the record before the Court, a reasonable juror could not find that Ms. Ratliff made out a violation of a constitutional right. Accordingly, Chief Hale and Officer Lucky are entitled to qualified immunity as to Ms. Ratliff's § 1983 claims, and the Court need not determine whether Ms. Ratliff's constitutional rights were clearly established. Even so, the Court notes that in regard to warrantless arrests for misdemeanor offenses, "any 'in the presence' requirement is far from clearly established." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1258-59 (8th Cir. 2010) (stating that, although the weight of authority holds that the Fourth Amendment does not impose an "in the presence" of the arresting officer requirement for a warrantless arrest for a misdemeanor, neither the Supreme Court nor the Eighth Circuit have decided the point). Because Chief Hale and Officer Lucky are entitled to qualified immunity, and because Ms. Ratliff has failed to raise a genuine issue of material fact regarding her § 1983 claims against them, the Court grants defendants' motion for summary judgment as to Ms. Ratliff's § 1983 claims against Chief Hale and Officer Lucky.

## 2. ACRA Claims

Pursuant to the ACRA, Ms. Ratliff alleges an unreasonable seizure claim in violation of the Arkansas Constitution, Article II, Section 15 and an equal protection claim in violation of the Arkansas Constitution, Article II, Sections 2, 3, and 18. In analyzing claims under the ACRA, courts give persuasive authority to state and federal decisions interpreting § 1983. *See* Ark. Code Ann. § 16-123-105(c). Accordingly, Article 2, Section 15 claims are analyzed in the same way as similar claims rooted in the Fourth Amendments. *Mullinax v. State*, 938 S.W.2d 801, 805 (Ark. 1997) ("We thus interpret Article 2, Section 15 in the same manner as the United States Supreme Court interprets the Fourth Amendment"). Further, Ms. Ratliff does not argue that the Arkansas Constitution and the ACRA are more protective than the Fourteenth Amendment and § 1983. *See Lewis v. Jacks*, 486 F.3d 1025, 1029-30 (8th Cir. 2007) (holding that district court did not err in dismissing state law claims as well as § 1983 claims on the merits when plaintiff did not argue that his state law claims required separate analysis). Thus, based on the § 1983 analysis above, the Court grants defendants' motion for summary judgment as to Ms. Ratliff's ACRA claims.

## 3. Tort Claims

Ms. Ratliff asserts three tort claims against Chief Hale and Officer Lucky under Arkansas law: malicious prosecution, false arrest, and outrage. Arkansas law requires a plaintiff claiming malicious prosecution to prove: "(1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages." *Brooks v. First State Bank, N.A.*, 374 S.W.3d 846, 849 (Ark. 2010) (citations omitted). For the reasons explained above, Ms. Ratliff cannot prove absence of probable cause for her arrest based

on the record before the Court. For those same reasons, she cannot prove absence of probable cause for the commencement and continuation of the legal proceedings against her. *Sundeen v. Kroger*, 133 S.W.3d 393, 396 (Ark. 2003) ("In the context of a malicious prosecution action, the existence of probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal proceedings."). The Court grants defendants' motion for summary judgment as to Ms. Ratliff's malicious prosecution claim. *Id.* at 398 (stating that summary judgment should be granted as to a malicious prosecution claim where the plaintiff cannot prove absence of probable cause).

To establish a claim of false arrest, also known as false imprisonment under Arkansas law, a plaintiff must show an "unlawful violation of the personal liberty of another consisting of detention without sufficient legal authority." *Headrick v. Wal-Mart Stores, Inc.*, 738 S.W.2d 418, 420 (Ark. 1987) (citations omitted). As a matter of law, probable cause defeats an action for false arrest. *Mendenhall v. Skaggs Cos.*, 685 S.W.2d 805, 807 (Ark. 1985). Again, Chief Hale and Officer Lucky had probable cause to arrest Ms. Ratliff based on the record before the Court, so the Court grants defendants' motion for summary judgment as to Ms. Ratliff's false arrest claim.

> Under Arkansas law, the tort of outrage requires plaintiff to establish that
>
> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 403-04 (Ark. 2002) (citations omitted) (internal quotation marks omitted). "Merely describing the conduct as outrageous does not make it so," and "the tort of outrage should not and does not open the doors of the courts to every

13

slight insult or indignity one must endure in life." *Kiersey v. Jeffrey*, 253 S.W.3d 438, 441 (2007) (citation omitted). The Court determines that a reasonable juror could not find that an arrest based on probable cause, even considering the other facts Ms. Ratliff alleges regarding Chief Hale and Officer Lucky's conduct, "extreme and outrageous." *See Miles v. City of Hartford*, 719 F. Supp. 2d 207, 218 (D. Conn. 2010), *aff'd*, 445 F. App'x 379 (2d Cir. 2011) (citation omitted) (stating that an arrest with probable cause may "lack[] the severity of outrageousness that a viable claim for intentional infliction of emotional distress requires" but that there were too many disputed issues of material fact to grant summary judgment on probable cause grounds (citation omitted)); *Hullender v. City of Kings Mountain*, No. 1:01-CV-41-C, 2002 WL 1919560, at *6 (W.D.N.C. Aug 16, 2002) (citation omitted) (explaining "[t]here simply is no way that an arrest based upon probable cause can, standing alone, exceed all bounds of decency or could be regarded as atrocious and utterly intolerable in a civilized community" (citations omitted) (internal quotation marks omitted)). For these reasons, the Court grants defendants' motion for summary judgment as to Ms. Ratliff's outrage claim.

### C. Ms. Ratliff's Claims Against The City And Its Officials

Ms. Ratliff alleges the City and its officials violated her Fourth and Fourteenth Amendment rights. Specifically, Ms. Ratliff claims that the City had a municipal custom of targeting minorities for stops, arrests, and prosecution and that its officials were deficient in hiring, training, and supervising police officers. Ms. Ratliff also alleges that the City and its officials are vicariously liable for the intentional tort claims against Chief Hale and Officer Lucky. Official capacity claims are tantamount to claims against the entity for which the official is an agent. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Likewise, the analysis for claims of deficient hiring, training, and

supervising against city officials in their individual capacity is identical to that for official capacity claims against the same city officials. *Morris v. Crawford Cnty.*, 299 F.3d 919, 921 (8th Cir. 2002). Thus, the Court will analyze such claims against the City and its officials together.

### 1. Municipal Custom

To establish § 1983 liability against the City based on a municipal custom, Ms. Ratliff must establish that a violation of her constitutional rights occurred and that the custom was a moving force behind the alleged constitutional violation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that, if an individual police officer did not inflict a constitutional injury on plaintiff, then it is inconceivable that a city and its police commissioner could be liable to respondent because, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Because as discussed above a reasonable juror could not find an underlying violation of Ms. Ratliff's constitutional rights based on the record before the Court, the City cannot be held liable based on an allegedly unconstitutional municipal custom.

Moreover, even if Ms. Ratliff could prove an underlying violation of her constitutional rights, liability for an unconstitutional custom cannot arise from a single act. *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991) (finding that "a single deviation from a written, official policy does not prove a conflicting custom or usage" (citations omitted)). To base liability on a municipal custom, a plaintiff must show the existence of a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).

Even when this Court considers Ms. Ratliff's evidence regarding the racial makeup of the City's arrestees and detainees, it does not establish a prior pattern of unconstitutional conduct, as it provides no insight into the constitutionality of those arrests or whether they were based on race. The Court grants defendants' motion for summary judgment as to Ms. Ratliff's municipal custom claim.

### 2.    Deficient Hiring, Training, And Supervising

Similarly, the Court determines that Ms. Ratliff's deficient hiring, training, and supervising claims cannot stand because a reasonable juror could not find an underlying violation of Ms. Ratliff's constitutional rights. *See City of Los Angeles*, 475 U.S. at 799 ("[The city and its police commissioner] were sued only because they were thought legally responsible for [an individual officer's] actions; if the latter inflicted no constitutional injury on [plaintiff], it is inconceivable that [the city and its police commissioner] could be liable to [plaintiff].")

Again, even if the Court assumes for purposes of this analysis an underlying violation of Ms. Ratliff's constitutional rights, a reasonable juror could not find based on the record before the Court that the City and its officials were deficient in hiring, training, and supervising police officers.  Ms. Ratliff has failed to present any evidence showing a close connection between the City's decision to hire Chief Hale or Officer Lucky and her alleged constitutional injury. *Morris*, 299 F.3d at 923 ("[A] plaintiff must show that the hiring decision and the plaintiff's alleged constitutional injury are closely connected—an applicant's background is that causal link."); *see also Schaub v. VonWald*, 638 F.3d 905, 921 (8th Cir. 2011) ("[W]here the causal link is so tenuous as to justify taking it from the trier of fact, a court may decide the issue as a matter of law." (citation omitted)).  Likewise, Ms. Ratliff has not presented evidence that the City and its officials "had notice that its procedures were inadequate and likely to result in a violation of

constitutional rights" such that "the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for more training or supervision." *Andrews*, 98 F.3d at 1076 (citation omitted) (discussing a failure to train claim); *see Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216-17 (8th Cir. 2013) (stating that failure to supervise claim requires the same analysis as a failure to train claim in that "[n]either claim can succeed without evidence the municipality [r]eceived notice of a pattern of unconstitutional acts committed by [its employees]" (second and third alterations in original) (citation omitted) (internal quotation marks omitted)). The Court grants defendants' motion for summary judgment as to Ms. Ratliff's deficient hiring, training, and supervising claims.

### 3. Vicarious Liability

Ms. Ratliff attempts to impute liability for the allegedly intentional tortious actions of Chief Hale and Officer Lucky to the remaining defendants based on the principles of vicarious liability. However, because the Court granted defendants' motion for summary judgment as to Ms. Ratliff's intentional tort claims against Chief Hale and Officer Lucky, the remaining defendants cannot be held vicariously liable. *See Rhodes v. Progressive Cas. Ins. Co.*, 820 S.W.2d 293, 295 (Ark. Ct. App. 1991) ("[W]hen the servant is not liable, the master for whom he was acting at the time should not be liable." (citation omitted)). The Court grants defendants' motion for summary judgment as to Ms. Ratliff's vicarious liability claim against the City and its officials.

### IV. Conclusion

In sum, the Court grants defendants' motion for summary judgment in its entirety. Ms. Ratliff's claims are dismissed.

SO ORDERED this the 16th day of September, 2014.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE